UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X

TULIO SERRATA

                Plaintiff,

**DOCKET NO.: CV-21-3669**

     *-against-*

COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPARTMENT, CHIEF OF DETECTIVES
GERARD GIGANTE, in his individual and official
capacity, LIEUTENANT MICHAEL A. CROWLEY,
in his individual and official capacity, POLICE
COMMISSIONER GERALDINE HART, in her
individual and official capacity and JOHN DOES 1-10,
in their individual and official capacities

**COMPLAINT**

***JURY TRIAL IS DEMANDED***

                Defendants.
---------------------------------------------------------------- X

     Plaintiff Tulio Serrata by and through his attorneys, the LAW OFFICES OF FREDERICK

K. BREWINGTON, as and for his Complaint, against the Defendants, states and alleges as follows:

## PRELIMINARY STATEMENT

     1.     This is a civil action seeking monetary relief (including past and on going economic

loss), compensatory and punitive damages, disbursements, costs and fees for violations of the

Plaintiff's rights, brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

et seq. (as amended), Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d) et seq., 42

U.S.C. §§1981, 1983, and 1988, New York State's Human Rights Law, Executive Law Art. 15, Civil

Service Law § 75-b

     2.     Specifically, the Plaintiff alleges that the collective Defendants engaged in

discrimination and retaliation and negligently, wantonly, recklessly, intentionally and knowingly

sought to and did wrongfully deprive Plaintiff of the appropriate employment position and title and

pay through acts that were taken against Plaintiff because of his race, color, and national origin, and opposing discrimination. These acts resulted in misrepresentation, misinformation, negative impact regarding Plaintiff, humiliation, embarrassment, depravation of job opportunities, loss of income and retirement benefits, permanent injury and harm and other results which continue to mount.

3.     Specifically, the Plaintiff alleges that the collective Defendants engaged in discrimination and retaliation and negligently, wantonly, recklessly, intentionally and knowingly sought to and did wrongfully deprive Plaintiff of the appropriate employment position and title and pay through acts that were taken against Plaintiff because of his race, color, and national origin, sex, disability and opposing discrimination. These acts resulted in misrepresentation, misinformation, harassment, character assassination, negative impact regarding Plaintiff's, humiliation, embarrassment, depravation of job opportunities, permanent injury and harm and other results which continue to mount.

4.     Plaintiff alleges that the collective Defendants, directly acted and/or allowed its agents, employees, representatives and/or officers to act maliciously and unconstitutionally, enacting discriminatory policies, which caused Plaintiff to suffer the following injuries:

- Violations of his various statutory rights, including those protected by Title VII of the Civil Rights Act of 1964, Article 15 of the Executive Law of the State of New York (Human Rights Law) §§ 290 and 296, Nassau County Human Rights Law, Civil Service Law § 75-b, ;

- Violations of his Constitutional rights under the Fourteenth Amendment to the United States Constitution (Fourteenth Amendment) in violation of 42 U.S.C. § 1983, and violations of 42 U.S.C. § 1981;

- Complete, temporary, or partial loss of reputation;

- Loss of benefits, pay, and future income;

- Prolonged alteration of employment and/or temporary/partial alteration of employment opportunities; and

- Diminished capacity, incurring special, monetary, and compensatory damages.

5.    Said acts were done knowingly with the consent and condonation of the COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE DEPARTMENT (hereinafter "SCPD" or "DEPARTMENT"), GERARD GIGANTE, in his individual and in his official capacity, LIEUTENANT MICHAEL A. CROWLEY, in his individual and in his official capacity, GERALDINE HART, in her individual and in her official capacity with the express purpose of targeting, injuring and silencing the Plaintiff, and generally violating his rights as protected by the United States and New York State Constitutions, and federal and state statutes, rules and regulations.

## JURISDICTION AND VENUE

6.    The jurisdiction of this Court is invoked under 28 U.S.C. §§1331 and 1343.

7.    This Court is requested to exercise pendant jurisdiction with respect to Plaintiff's State law claims pursuant to 28 U.S.C.§ 1367.

8.    Venue in the Eastern District of New York is proper under 28 U.S.C. §1391, based on the fact that Plaintiff resides in Suffolk County, New York and the Defendants are conducting business in the State of New York, specifically Suffolk County. Upon information and belief the individual Defendants reside in the Eastern District of New York.

9.    Prior hereto, on June 12, 2019, Plaintiff was asked, and consented, to provide testimony at the Government Operations, Personnel, Housing & Information Technology Committee of the Suffolk County Legislature while employed by COUNTY and SCPD regarding discriminatory employment practices of Suffolk County and SCPD.

3

filed.

10.    On May 14, 2020 Plaintiff dual filed Charge of Discrimination Case No. 10207976 against Defendants with the New York State Division of Human Rights (hereinafter "NYSDHR") and Charge of Discrimination Case No. 16GC002954 against Defendants with the EEOC asserting his wrongful discrimination due to the Defendants' animus on the basis of Plaintiff's race, color, and national origin and asserting that he has been retaliated against by Defendants after testifying before the Suffolk County Legislature.

11.    On March 31, 2021, Plaintiff received a Notice of Right to Sue Within 90 Days, issued by the U.S. Department of Justice with regard to EEOC Charge No. 16G-2020-02954 (copy annexed hereto as Exhibit "A"). As of the filing of this complaint, ninety days from the date of receipt of the Notice of Right to Sue has not yet passed.

## PARTIES

12.    Plaintiff, Tulio Serrata (hereinafter "Plaintiff" or "Serrata" or "Mr. Serrata"), at all times relevant in this Complaint, is a Hispanic (Latino) male with brown skin originating from Puerto Rico, and is a citizen of the United States of America. Plaintiff is employed by the Suffolk of Suffolk in the Suffolk County Police Department and currently holds the rank of Detective Sergeant. Plaintiff resides in the County of Suffolk, State of New York.

13.    During all times relevant to this Complaint the Defendant COUNTY OF SUFFOLK (hereinafter "SUFFOLK" or "COUNTY") was and is a municipality of the State of New York. Upon information and belief, the COUNTY oversees, maintains, manages/supervises, and controls several departments, agencies and employees, including but not limited to, the SCPD, GERARD GIGANTE, LIEUTENANT MICHAEL A. CROWLEY, GERALDINE HART (and JOHN DOES

1-10), and was and is the employer of members of the SUFFOLK COUNTY POLICE DEPARTMENT. COUNTY is an employer within the definition of the New York State Executive Law, Title VII, is a public employer within the definition of Civil Service Law § 75-b, and employs well over 15 employees.

14.     COUNTY receives and utilizes federal funds and assistance in the conducting of its policing functions within the County of Suffolk. Such funds include but are not limited to $286 million dollars in federal aid under the American Rescue Plan, to help prevent layoffs and avoid the planned budget cuts to the Police Department and Public Safety among others; $696,000 in Department of Justice funding for the SCPD's human trafficking unit, and $2.1 million of funds is dedicated to complying with a federally mandated overhaul of the police department's records management system are among some fo th Federal funds received by the COUNTY OF SUFFOLK and SCPD.

15.     During all times relevant in this Complaint the Defendant SUFFOLK COUNTY POLICE DEPARTMENT is an agency of the COUNTY OF SUFFOLK and operates under the direction and on behalf of Defendant COUNTY.

16.     DEFENDANT, GERARD GIGANTE (hereinafter "GIGANTE"), is the Chief of Detectives for the Suffolk County Police Department and is sued in his individual and official capacity, and was at all times herein mentioned supervising members of the Suffolk County Police Department, and was employed by the COUNTY OF SUFFOLK under the direction of Defendants, COUNTY. GIGANTE was at all times relevant to this complaint acting in furtherance of the scope of his employment, acting under color of law, to wit under color of statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the COUNTY OF SUFFOLK.

17. DEFENDANT, LIEUTENANT MICHAEL A. CROWLEY (hereinafter "CROWLEY"), is a Lieutenant for the Suffolk County Police Department and is sued in his individual and official capacity, and was at all times herein mentioned supervising members of the Suffolk County Police Department, and was employed by the COUNTY OF SUFFOLK under the direction of Defendants, COUNTY. CROWLEY was at all times relevant to this complaint acting in furtherance of the scope of his employment, acting under color of law, to wit under color of statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the COUNTY OF SUFFOLK.

18. DEFENDANT GERALDINE HART is the Commissioner for the Suffolk County Police Department and is sued in her individual and official capacity, and was at all times herein mentioned supervising members of the Suffolk County Police Department, and was employed by the COUNTY OF SUFFOLK under the direction of Defendants, COUNTY. HART was at all times relevant to this complaint acting in furtherance of the scope of her employment, acting under color of law, to wit under color of statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the COUNTY OF SUFFOLK.

19. DEFENDANTS JOHN DOES 1-10 (who are currently not known by name by Plaintiff, but who are know by Defendants) are sued in their individual and official capacities (hereinafter collectively referred to as "DEFENDANT POLICE OFFICERS" or "DEFENDANT OFFICERS") The DEFENDANT OFFICERS were at all times acting in furtherance of the scope of their employment, acting under color of law, to wit under color of statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the COUNTY OF SUFFOLK.

## FACTUAL ALLEGATIONS

## A HISTORY OF DISCRIMINATION AND PROMISES TO CHANGE

20.     According to an email dated May 9, 2019 from Carolyn Weiss, Senior Trial Attorney

of the Employment Litigation Section Civil Rights Division, the United States Justice Department

"conducts monitoring of the Suffolk County Police Department ("SCPD") pursuant to a consent

decree that was entered in *U.S. v. Suffolk County* E.D.N.Y. 83-C-2737). That consent decree is

grounded in Title VII of the Civil Rights Act of 1964, as amended. Specifically, the consent decree,

which is a publicly filed document, covers disparate treatment and disparate impact discrimination

against African Americans, Hispanics and women in all SCPD employment practices. Given the

scope of the consent decree, [the Justice Department] reviews the SCPD's employment practices

through the lens of equal employment opportunity based on race, ethnicity and gender."

21.     That Consent Decree was approved and entered by the Court on September 12, 1986.

In the Consent Decree, while the COUNTY expressly denies that it had discriminated against

women, Blacks or Hspanics, it acknowledges that certain of its selection criteria and personnel

practices and the substantial under-representation of women, Blacks and Hspanics in the SCPD

could support an inference that discrimination had occurred. This Decree and acknowledgment

covered hiring and promotions.

22.     The Consent Decree expressly prohibits the County (including SCPD) from engaging

in any further discrimination (Decree, ¶ 2), requires monitoring by the United States of the

COUNTY's compliance with the Decree (Decree, ¶¶ 32-35), and provides that the Court retain

jurisdiction of the United States' action against the COUNTY for the purpose of implementing the

relief provided in the Decree, as well as "to effectuate Suffolk County's full and complete compliance

with Title VII." (Decree, ¶ 37)

23.     In addition to the 1986 Consent Decree, the SUFFOLK COUNTY POLICE DEPARTMENT has been and continues to be the subject of another Federal Consent Decree which was entered into in the form of an Agreement on or about January of 2014.  The focus of this Agreement was on serious shortcomings identified and confirmed within the SUFFOLK COUNTY POLICE DEPARTMENT in its dealings, interactions and contacts with members of the Hispanic/Latino communities of Suffolk County.

24.     Part of that Agreement was focused on ensuring that "SCPD will maintain implementation of a comprehensive policy prohibiting discrimination, including the denial of services, on the basis of race, color, ethnicity, national origin, religion, or sexual orientation in the SCPD police practices."

25.     Further,  that Agreement between Suffolk County and the United States Justice Department required that the "SCPD will maintain and implement a policy that promotes bias-free policing and equal protection in its hiring, promotion, and performance assessments processes. Officers who have a history of engaging in biased policing practices will not be entitled to promotional opportunities, except as required by collective bargaining laws and Civil Service Law, rules and regulations."

26.     Plaintiff is a bilingual Latino man who is a graduate of Suffolk Community College where he maintained a Deans List GPA while obtaining  an Associates in Applied Sciences in Criminal Justice. Plaintiff resides in the County of Suffolk.

27. This Federal Complaint is filed in light of the unresponsiveness, insensitivity, continued employment discrimination and retaliation to which Plaintiff has been and continues to be subjected, since reporting his employment experiences during testimony at the Government Operations, Personnel, Housing & Information Technology Committee of the Suffolk County Legislature while employed by COUNTY and SCPD on June 12, 2019.

## PLAINTIFF'S EMPLOYMENT WITH THE COUNTY OF SUFFOLK

28. Plaintiff was hired by Defendant COUNTY into the Suffolk County Police Academy in December 1998 through a minority equal hiring program. After being elected Vice President of his Academy class, Plaintiff graduated and was hired by SCPD in June of 1999. At all times during his employment with COUNTY and SCPD, and to this day with COUNTY and SCPD, Plaintiff performed his duties in an exemplary fashion. Plaintiff's exemplary work was achieved despite the fact that his work environment initially began, and has become increasingly more, discriminatory, hostile and abusive.

29. Since joining the COUNTY and SCPD, Plaintiff has worked various assignments and is presently assigned to the Fourth (4th) Precinct as one of only three (3) Latino Detective Sergeants in the SCPD.

30. In 2017, after scoring 98.7 out of a possible 100 on the civil service Sergeants examination, Plaintiff was promoted to the rank of Sergeant. While waiting for his earned promotion, Plaintiff requested assignment in the First (1st) Precinct which is the busiest precinct in the County.

31. Subsequently, Plaintiff was promoted. His request for transfer was granted and Mr. Serrata then excelled during his time in the First (1st) Precinct.

9

32.     Following Plaintiff's promotion to Sergeant, over the past three (3) years, he has been passed over for five (5) different promotional positions for which he was qualified. Those positions, for which Plaintiff was more than qualified, would have provided Plaintiff a position in a specialized command unit where he would earn a greater salary, prestige and have a greater impact upon public safety.

33.     In each instance Plaintiff was passed over in favor of a Caucasian male. None of the promotions for which Plaintiff was passed over allowed his performance or ability for the new position to be based upon an objective score.

34.     Despite Plaintiff's excellent qualifications and performance in the employ of DEFENDANTS, Plaintiff is currently assigned to the Fourth (4th) Precinct which not only is not a Specialized Command, but, is the least active and least financially rewarding precinct in the County.

35.     Plaintiff's qualifications and experience dictate that he would undoubtedly be more effective to SCPD, and the COUNTY in the busiest of Precincts, in a Specialized Command handling cases involving defendants posing the greatest risks to the public. Any failure to so assign him to such units and work creates and heightens public safety issues.

36.     On July 31, 2017, after four months in his supervisory position with the First (1st) Precinct, Plaintiff applied for a promotion to the position of Detective Sergeant. The Inspector of Plaintiff's Command, Matthew Lewis who is now an Assistant Chief in the Chief of Detectives Office, wrote that Plaintiff had a very good background for the promotional position and could further benefit from additional supervisory training. Plaintiff was not promoted at that time.

37. Defendant's excuse for not promoting Plaintiff was based upon Plaintiff's "mere four months" of supervisory experience as reported by Commanding Officer Matthew Lewis. However, Salvatore Gigante, the Caucasian male to whom the position of Detective Sergeant was handed, was merely a probationary Sergeant for only four (4) months, with no supervisory experience. He was still on probation. Plaintiff was informed that he would be placed into a pool of candidates for future consideration when a position becomes available.

38. This documented example of one standard for the Latino Mr. Serrata, allegedly "experience" in this instance, and the fact that no such standard or barrier exists for the Caucasian Mr. Gigante, is a *prima facie* example of Defendants discriminatory employment practices.

39. On November 19, 2018, although there were no openings posted, Plaintiff applied for a position in Homicide in order that the Department be made aware of his interest in working in Homicide. Plaintiff was aware that Detective Sergeant Lesser was retiring and his position would be open in January of 2019. Plaintiff was not promoted at that time.

40. Here again, the position was filled by a Caucasian male. In this instance, Plaintiff was informed that the selection cannot be considered discriminatory because Plaintiff applied for a position that was not yet open. It is common practice, as noted in Respondents argument for not promoting Mr. Serrata in his July 2017 application for Detective Sergeant, for an application to be placed into a pool for a later time. Here again the discriminatory contradictory behavior and subsequent arguments of Respondents are on full display. Respondent's first argument is that although Mr. Serrata was not promoted to the position of Detective Sergeant in Homicide, he was placed into a pool for future consideration for a promotion to a position not yet open, and therefore there is no discrimination. The second argument is that because Mr. Serrata put himself into a pool

for future consideration for a promotion to a position not yet open, when he is denied that promotion, there can be no discrimination because he applied for a position not yet open. Defendants would have us accept the following: 1) being denied for an open position and put in a pool for an unopen position is not discriminatory. 2) being denied for an unopened position because you put the application in a pool is also not discriminatory. This is a perfect inescapable circle of discriminatory practice where Respondents contend and expect this Court to accept this process which allows unqualified Caucasian male Salvatore Gigante to be given the open position in the first argument and Caucasian male Joe Isnardi, with zero (0) experience in Homicide given the unopened position in the second (2nd) argument and this process cannot be questioned by Latin Mr. Serrata as discriminatory.

41.    On November 30, 2018 transfer Order 18-263 was released for Detectives and Detective Sergeants interested in transferring to the District Attorney's Office. On that same date, transfer Order 18-264 was released for Police Officers interested in becoming Detectives. Within a few days of the release of these Orders Plaintiff applied for the position of Detective Sergeant within the District Attorney's Office.

42.    Order 18-263 states in pertinent part, "The District Attorney Section anticipates an opening for Detective Sergeant and several Detectives in the near future. Applications are limited to those currently holding the designation of Detective."

43.    This Order was for a transfer into a Detective Sergeant position within the District Attorney Section. This position is a supervisory position and the applicant needs to have supervisory experience such as that of a Sergeant.

44.     Historically, the District Attorney Section Detective Sergeant position includes huge overtime potential, a fact well known in the SCPD. This is a fact known by GIGANTE, HART, CROWLEY, SCPD and the COUNTY.

45.     In 2018, the two District Attorney Section Detective Sergeants earned $308,502.00 and $336,708.00. This puts them in the highest echelon in earnings in the SCPD, more than most if not all of the highest ranking officials in the department.

46.     Supervisory experience is required as the District Attorney section is a Detective Squad in the Detective Division and in order to supervise detectives, a Detective Sergeant is required. Detective is a designation, not a rank. Sergeant is a supervisory rank. Therefore, according to the Order 18-263, the mere designation of Detective is insufficient to allow a transfer to the position of Detective Sergeant within the District Attorney's Section.

47.     At the time of his application Mr. Serrata had twenty (21) years tenure with SCPD, ten (10) years in the Detective Division, and was a Sergeant for one year eight months (1 year 8 months) as supervisory Sergeant at the time of his application for Detective Sergeant in the District Attorney Section.

48.     Following his application, Plaintiff, the only Latin/Hispanic to apply for the position, was neither interviewed, nor promoted at that time. To date Mr. Serrata has never received an interview for the position of Detective Sergeant of the District Attorney Section.

49.     Salvatore Gigante (hereinafter referred to as "S. Gigante"), a Caucasian male and believed to be related to Defendant GIGANTE also applied for this position on the same day as Plaintiff. Mr. S. Gigante was not appropriately in the hiring pool because he was ineligible for the position as he did not hold the rank of either Detective or Detective Sergeant. This was a fact well

13

known to GIGANTE, HART, CROWLEY, SCPD and the COUNTY.

50.     Subsequently, just a week later, on December 6, 2018, transfer Order 18-270 was issued allowing Sergeants interested in being promoted to Detective Sergeant to apply for promotion. Plaintiff previously applied, was eligible, and was not promoted at that time.

51.     Mr. S. Gigante, the Caucasian male who received the promotion to Detective Sergeant within the District Attorney Section had only twelve (12) years tenure with SCPD, well under two (2) years experience as a detective, and only four (4) months of probationary experience as a Sergeant. In other words, Mr. S. Gigante experience as a detective and his extremely limited experience supervising in the Detective Division do not compare to Mr. Serrata's experience. The Order did not permit the application by Mr. S. Gigante, no less the awarding of the position. He was only a Sergeant and, therefore, unqualified to apply for, and unqualified to supervise in the Detective Division, the job he was chosen for.

52.     Given that Mr. S. Gigante had been in the position as a probationary Sergeant for approximately 4 months, his hiring was an apparent violation of New York State Civil Service Law Section 61(2).

53.     On December 18, 2018 five (5) individuals were interviewed for the position of Detective Sergeant within the District Attorney's Office. Not only was Plaintiff not one of the individuals interviewed, but Salvatore Gigante, who was neither a Detective nor a Detective Sergeant, and in fact was still on Probation as a Sergeant at the time of the release of Order 18-270, was granted an interview.

14

54. Mr. S. Gigante's interview took place December 18, 2020 approximately three (3) weeks after the aforementioned Orders were released. Additionally, in further contrast from Mr. Serrata, Mr. Gigante's interview was unique in that it was conducted with the inclusion of the Commanding Officer of the District Attorney Section.

55. Commanding Officers do not normally attend panel interviews. Commanding Officers may, however, attend interviews for a Specialized Squad in the District Attorney Section. Solely because of the discriminatory practices of the County and SCPD, because of the attempts at manipulating and contradicting the Orders and rules pertaining to promotions, the less qualified Caucasian male Salvatore Gigante was promoted over Plaintiff with far more qualified experience.

56. Salvatore Gigante's interview, contrary to the General Squad interview Plaintiff received in July of 2017, was attended by the Commanding Officer of the District Attorney's Office.

57. This was an express interview for a Specialized Command, a Command for which Plaintiff was never permitted to interview. On or about December 21, 2018, a mere three (3) days after his interview, Salvatore Gigante received a transfer to the District Attorney's Office pending the January 2, 2019 promotion to Detective Sergeant in the District Attorney's Office, the most lucrative position in Suffolk County.

58. Knowing that the hiring and appointment of Mr. S. Gigante was discriminatory and a violation of law, the Police Commissioner, DEFENDANT HART, wrote the Office of the County Executive to seek ratification of this abuse of authority and violative hiring and appointment. The Police Commissioner wrote the letter to the Suffolk County Executive's Government Liaison Officer on January 29, 2019 stating in relevant part:

"Dear Ms. Keyes:
   I respectfully request that the County Executive propose the
   attached legislative resolution approving the appointment of
   [Mr. GIGANTE] to Detective Sergeant in the Suffolk county Police
   Department pursuant to section A6-3 of the Suffolk County Code.
   The proposed resolution will allow the Suffolk County Police
   Department to fill a currently vacant position. . .. "

59.     In this letter DEFENDANT HART demonstrated that she was well aware of
violations which had taken place in the appointment of Mr. S. Gigante, and to cover that violation
and allow this transfer to stand, notwithstanding Mr. S. Gigante's transfer a month before, contrary
to the Order that disallowed his application for a job that, as a non-Detective Sergeant, he was
facially unqualified for.

60.     On February 11, 2019, then Presiding Officer DuWayne Gregory spoke with Suffolk
County Police Commissioner Geraldine Hart about the process followed in the hiring of the
Detective Sergeant in the District Attorney's Office.

61.     During that conversation, Mr. Gregory and Commissioner Hart discussed the failure
of SCPD to conduct an interview with Plaintiff.   Then Legislator Gregory followed up that
conversation on February 26, 2019 with a conversation with District Attorney Tim Sini regarding
the failure of the SCPD to conduct an interview with Plaintiff.

62.     Thereafter, upon information and belief  GIGANTE, HART, SCPD and the
COUNTY attempted thwart an investigation being conducted by the Suffolk County Legislature
through its Special Counsel, Joel Weiss, Esq.  On May 8, 2019 David Kelly, as counsel to the
Suffolk County Attorney, wrote to Mr. Weiss and made the following statement:

   "In view of the foregoing, we respectfully urge you to refrain from any
   further investigation of this matter in lieu of and in deference to the review
   of this matter by the Civil Rights Division without creating any possible

16

impediments or obstruction to the fair and impartial process underway."

63. According to Mr. Weiss:

> Mr. Kelley's letter is wrong on all counts. In simple terms, in the DOJ's view, there is no conflict with the DOJ's separate and different function. They "do not review or have authority to act on nepotism or whistleblower related activity per se". This Legislature does have that authority. Further, the DOJ does not view this investigation as an impediment to their review.
>
> ....
>
> Mr. Kelley's letter is as inaccurate on this issue as it is in relation to the USDOJ Civil Rights Division issue. There is no conflict of interest and Chapter 77-3 of the Suffolk County Code in no way addresses this.

64. As part of his work as Special Counsel, on April 17, 2019 Mr. Weiss sent letters to the Suffolk County Police Commissioner (DEFENDANT HART), Chief of Detectives (DEFENDANT GIGANTE) and Salvatore Gigante asking them to be interviewed and to cooperate with his investigation. Each of them failed and refused to respond, no less cooperate.

65. This selection was an abuse of authority, was discriminatory and totally contrary to the proper process and procedure within the Department. Following Plaintiff's testimony against the discriminatory employment practices of the COUNTY and SCPD, Plaintiff attempted to transfer out of his low paying, low activity, and below his qualifications position in the Fourth (4th) Precinct to a position where he would be justly compensated and his talents would be put to better use in serving the public safety. Each time Plaintiff sought to be promoted his efforts were thwarted by GIGANTE, HART, CROWLEY, SCPD and the COUNTY who all authorized this action and took no action to prevent it.

66. Only after Legislator Gregory's intervention, and waiting nearly a year and a half, was Plaintiff promoted to the rank of Detective Sergeant on March 5, 2019. However, Plaintiff was not moved into a Specialized Command handling intricate long term cases as per his qualifications.

67. Rather, Plaintiff was essentially demoted. Plaintiff was transferred from the busiest Precinct in the County to the Fourth (4th) Precinct, General Command, which is slowest Precinct in the County. GIGANTE, HART, CROWLEY, SCPD and the COUNTY all authorized this action and took no action to prevent it.

68. After being requested to do so, and after providing notice of the request and being granted permission to do so, Plaintiff testified on June 12, 2019 at the Government Operations, Personnel, Housing & Information Technology Committee of the Suffolk County Legislature.

69. Plaintiff's sworn testimony was in regard to the failure of the COUNTY to interview him for the position of Detective Sergeant within the District Attorney's office, and instead add new Orders by passing candidates of color, allowing the hire of the least qualified applicant, and nephew of Suffolk County Chief of Detectives Gerard Gigante, Salvatore Gigante, a Caucasian male.

70. In his personal appearance before the Legislature where his race and color were apparent, he was recognized as an aggrieved party. Present to witness his testimony was Defendant HART. In his testimony before the Suffolk County Legislature the following discussion took place:

LEG. LINDSAY: Mr. Serrata, thank you very much for coming in. Thank you for your service to the County and to your community. My question is did you file a union grievance or any type of labor grievance?

DETECTIVE SERGEANT SERRATA: No, I did not.

LEG. LINDSAY: Is there an opportunity for you to do that? That would be the natural place, I would think, that this would be settled.

DETECTIVE SERGEANT SERRATA: It is my understanding that the union has filed a grievance regarding this incident.

LEG. LINDSAY: But why wouldn't you file one yourself, because it's -- you were -- you are the aggrieved,

DETECTIVE SERGEANT SERRATA: I did not file a grievance. I initially didn't want -- I wanted nothing to do with this incident. I was upset personally, I was insulted. I felt that I was deserving, and that's pretty much about it.

71.     Then, apparently based on his name and appearance, Mr. Serrata was asked a question about his ability to speak Spanish. Then Legislator Trotta made the inquiry, stating::

CHAIRMAN CALARCO: Okay. Legislator Trotta.

LEG. TROTTA: Do you speak Spanish?

DETECTIVE SERGEANT SERRATA: Yes, I do.

LEG. TROTTA: Thank you. Okay.

72.     However, Plaintiff was further discriminated and retaliated against, as he was refused three (3) positions within SCPD for which he was more than minimally qualified. In each instance, the position was secured by a Caucasian male with less experience than Plaintiff. Two of the three positions were never even posted. GIGANTE, HART, CROWLEY, SCPD and the COUNTY all authorized this action and took no action to prevent it.

73.     Not only were Defendant's aware of this retaliation against Mr. Serrata for testifying against the discriminatory employment practices of Defendants, but Defendant GIGANTE, as Division Chief, personally reviewed and signed all of Mr. Serrata's transfer request applications.

74.     Defendants GIGANTE, HART, SCPD and the COUNTY all authorized this action and were well aware of the process in which Salvatore Gigante applied for and sought to have the rules changed concerning his seeking to be appointed in the Office of the District Attorney.

75.     County law required the Suffolk County Legislature to vote on whether to grant a nepotism waiver to S. Gigante. This was a fact that GIGANTE, HART, CROWLEY, SCPD and the COUNTY knew and were well aware of .

76.     After Special Counsel Joel Weiss, who was hired by the Legislature, concluded that Salvatore Gigante secured the job even though he lacked the minimum qualifications for the position, the Legislature did not approve the waiver. This is another fact that Defendant GIGANTE was well aware of.

77.     Thereafter and after Plaintiff testified before the Legislature, it was GIGANTE who had authority, power and decision process of all promotions and transfers of Detectives in the Suffolk County Police Department, including Plaintiff.

78.     Defendants GIGANTE, HART, CROWLEY, SCPD and the COUNTY all knew that Plaintiff sought promotions and transfers after he testified, but used their power, influence and authority to deny each and every promotion and transfer Plaintiff sought as a form of further discrimination and retaliation against Plaintiff.

79.     On March 2, 2020 the position for which Plaintiff applied and was discriminated against because of his race, color, and national origin and retaliated against following his testimony against the discriminatory practices of SCPD and the COUNTY, was Detective Sergeant in Homicide. This position was never posted.

80.     Plaintiff did not need to apply for this particular position as his application of November 19, 2019 was still valid. However, Plaintiff was not notified of or interviewed for the opening of this Homicide position.

81.     The Homicide position was given to Joseph Isnardi, a Caucasian male with no experience in homicide. His lack of homicide experience is in stark contrast and pales in comparison to Plaintiff's five (5) years as a detective in Homicide, two (2) years assisting Homicide Detectives, two (2) years supervisory work, and more than one (1) year as Detective Sergeant supervising detectives.

82.     On March 16, 2020, the next position for which Plaintiff was discriminated against because of his race, color, and national origin and retaliated against following his testimony against the discriminatory practices of the SCPD and the COUNTY was Detective Sergeant in the Narcotics Division. Here, the position was given to Sean Hanley, a Caucasian male who did not attain the rank of Detective Sergeant and had limited experience as a Sergeant. As previously stated, Plaintiff was a Sergeant since March of 2017 before being promoted to Detective Sergeant in March of 2019. This was certainly more experience than the Caucasian male who was given the position.

83.     Thereafter, on March 23, 2020, the position for which Plaintiff was discriminated against because of his race, color, and national origin and retaliated against following his testimony against the discriminatory practices of the SCPD and the COUNTY, was again for an unposted position of Detective Sergeant in the Homicide Division. This time, the position was given to Ron Leli, a Caucasian male with only one (1) year experience as Sergeant, and a meager **two (2) months as Detective Sergeant.**

84.     Furthermore, Mr. Leli was given this promotion approximately two weeks following Detective Sergeant John Kempf being confined to bed with what would become a terminal illness. With this short window, and no notice given, Plaintiff had no opportunity to even inquire about this position. As above, Plaintiff's experience far outweighs that of the Caucasian male who was given

the position.

85.     This level of blatant, overt discrimination by SCPD and COUNTY greatly shook and upset Plaintiff.  Plaintiff excels at his job, and has excelled at his job since entering the Police Academy more than twenty one (21) years ago.  However, the realization that he would not be judged by the irreproachable merits of his work, but rather discriminated against because of his race, color, and/or national origin, not only caused Plaintiff to doubt his ability to receive a well deserved promotion, but he now questioned his ability to be treated fairly in any aspect of his job, which is one of the most dangerous occupations in existence, where trust of his co-workers, supervisors and team is paramount.

86.     It became abundantly clear to Plaintiff that these repeated denials of career advancement were race and color based and further, were direct responses to his testimony of June 12, 2019 outlining a specific incident of the COUNTY and SCPD's continued overtly discriminatory employment practices.

87.     Defendant GIGANTE has been and continues to be a subject of an Internal Affairs investigation into an allegation of misconduct in a promotional process overseen by his office.

88.     The allegations arise from facts that a sergeant who was seeking promotion to detective sergeant obtained five pages of questions and answers that were prepared for use in an interview-based selection process.  The Internal Affairs investigation is reviewing the facts about this cheating scandal and is ongoing.  Upon information and belief, GIGANTE, HART, CROWLEY, SCPD and the COUNTY all were fully aware or should have been fully aware of this violation and took no action to prevent it.

89. In addition to his rank and work record, Plaintiff is President of the Hispanic Society, the fraternal organization of Hispanic law enforcement officers aimed at opposing discrimination and combating racial disparities within the Suffolk County Police Department. GIGANTE, HART, CROWLEY, SCPD and the COUNTY all were aware of the Hispanic Society and Plaintiff's involvement in that organization.

90. In his role as President of the Hispanic Society, Plaintiff is a highly visible member of Hispanic police community and the SCPD. In evaluating how an outstanding twenty one (21) year veteran Hispanic member of SCPD is treated, Plaintiff realized that he must confront the discriminatory employment practices of GIGANTE, HART, CROWLEY, SCPD and the COUNTY and the way in which he has been negatively impacted emotionally and financially.

91. Plaintiff has been consistently deprived of a position in a Specialized Command, in spite of his qualifications, because he is a Hispanic man, and GIGANTE, HART, CROWLEY, SCPD and the COUNTY all authorized these actions and took no action to prevent the continuing discrimination against him as well as the retaliation which is ongoing.

92. On or about the last week of March 2020, Plaintiff spoke with his Union President, James Gruenfeld regarding the discriminatory employment practices of SCPD and the COUNTY.

93. Plaintiff complained of the way in which he was repeatedly being passed over and not notified of open positions within SCPD for which he was eligible and more than qualified. Plaintiff expressed his concerns of a possible conflict of interest as the Union represents both himself and individuals who were wrongfully promoted over him because of his race, color, and national origin.

94.     Plaintiff was then informed by Mr. Gruenfeld that he would speak with Union attorney Paul Linzer regarding his Complaint.

95.     On March 25, 2020, Paul Linzer contacted Plaintiff on behalf of the Union and declined investigating his Complaint. Rather, he informed Plaintiff that he had no case or basis to complain because he was not fired from his position, nor disciplined following his testimony before the Legislature, and therefore had not experienced any retaliation.

96.     Mr. Linzer further advised Plaintiff that he had no whistle-blower status as there was no substantial and specific danger to public health and safety. After repeatedly asking Plaintiff what his next actions may be, Mr. Linzer informed Plaintiff that he would need to speak with another attorney, Steve McQuade, and the two would contact him shortly.

97.     On April 1, 2020 Paul Linzer and Steve McQuade telephoned Plaintiff. Mr. Linzer informed Plaintiff that the Union was pursuing a lawsuit on behalf of Salvatore Gigante against DuWayne Gregory. Plaintiff continually voiced his opposition and concern of a possible conflict of interest because of his testimony at the Legislative Committee regarding Salvatore Gigante's involvement in the discriminatory and improper practices of the COUNTY and SCPD. Mr. Linzer eventually informed Plaintiff that he may indeed have to recuse himself from representing Plaintiff somewhere down the road. Mr. Linzer continued to give legal advice by asserting that Plaintiff experienced no discrimination or retaliation as Plaintiff was neither fired from my job nor disciplined.

98.     As of the filing of this Complaint, Plaintiff has not been contacted by Defendants COUNTY or SCPD regarding any investigation into the actions of SCPD and/or COUNTY, or to seek any details as to how Plaintiff has been, and continues to be, discriminated against. These

continued discriminatory practices have hindered Plaintiff's ability to function as effectively in his job and perform his duties to his highest ability. Plaintiff continues to be challenged to function as he is capable of functioning, earning as he is able to earn and advance as he should be advancing but for his race, color and ethnicity and his discriminatory treatment as set out above.

99.    Not only were these matters not fully investigated, they were treated as unimportant events. The County, Union President and the Union Attorneys each made no real effort to evaluate the discriminatory employment practices continually executed by SCPD and COUNTY, or the effect these practices have on the environment in which Plaintiff is expected to work.

100.    Further, Plaintiff was discouraged from raising the wrongful treatment he received from his Union by being told that there is nothing to complain about because he still have a job. This statement was not only false, misleading but demeaning, and was a threat.

101.    Plaintiff has reported his abusive and discriminatory treatment to the Suffolk County Legislature and Suffolk County officials, all of whom are well aware of the wrongful treatment to which Plaintiff has been subjected due to his race, color and ethnicity.

102.    Plaintiff is concerned that since testifying against GIGANTE, HART, CROWLEY, SCPD and the COUNTY regarding their discriminatory employment practices and asking that something be done, he has been subjected to continued and unwarranted discriminatory practices including denying him the positions and income he deserves based upon his qualifications and the quality of his work.

103.    Since Plaintiff testified before the Suffolk County Legislature, Defendant CROWLEY has continued to require additional and more documentation in order for Plaintiff to seek and obtain payment for his overtime hours worked. This treatment is unique to Plaintiff and is not required of

other White Detectives. This treatment is condoned and accepted by GIGANTE, HART, SCPD and the COUNTY, all of whom authorized these actions and took no action to prevent them.

104. Further, Defendant CROWLEY has purposefully withheld approval and the granting of authority for Plaintiff to be paid his overtime pay despite his paperwork, which is in excess of what others are required to file, being provided and filed in a timely and prompt fashion.

105. Defendant CROWLEY, in taking these actions, intentionally sought to and is seeking to impact Plaintiffs's financial well being and further harm plaintiff knowing that he has complained and raised issues about mistreatment, discrimination and retaliation. This withholding of Plaintiff's overtime pay is not consistent of how White Detectives and Officers have been treated.

106. Upon information and belief, this treatment by CROWLEY is and was known by GIGANTE, HART, SCPD and the COUNTY all authorized these actions and took no action to prevent them.

107. On April 26, 2021, Detective Sergeant Serrata was scheduled to work his normal 9:00 A.M. to 5:00 P.M. shift, when he received a work related phone call at 4:15 A.M. from Sergeant Bender. The call advised Mr. Serrata of a Grand Larceny where evidence was recovered at three separate locations. Mr. Serrata issued orders to maintain the scene as per protocol, instructed Detectives Turansky and Maynes to respond and headed to the scene himself. Mr. Serrata was now working in his capacity as a SCPD Detective Sergeant.

108. En route to the scene while stopped at a light, Mr. Serrata was rear ended causing him to sustain injuries to his head, neck and back. He was transported to Stony Brook Hospital where he was treated for his injuries and later released.

109.     Thereafter on May 17, 2021, Defendants, in their continued retaliation against Mr. Serrata, declared that the accident involving Mr. Serrata on his way to a crime scene after receiving a call and issuing orders was not work related, and closed his workers compensation case thereby causing Mr. Serrata to incur medical bills for performing his job function.

110.     It is a well known fact, known by GIGANTE, HART, CROWLEY, SCPD and COUNTY that Plaintiff testified against SCPD and COUNTY at the Legislative Hearing. Plaintiff's qualifications are also well known, as are the lack of qualifications of those Caucasian males given promotions and choice of assignments over him.   It is also a well known fact that Plaintiff is seriously impacted by the impunity with which GIGANTE, HART, CROWLEY, SCPD and COUNTY operate in their blatant discrimination and retaliation against him.

111.     The hostile treatment and callous attitude to which he was and continues to be subjected following his testimony before the Suffolk County Legislature is consistent to a pattern of hostility that has continued in the SCPD against persons of color, including but not limited to Black and Brown members of the SCPD.  It was magnified when Plaintiff came forward, testified, and began asking for fairness in the employment practices of the COUNTY and SCPD.  This clear retaliation taken against Plaintiff is a further attempt to create an unwelcome work environment for him.

112.     The wrongful treatment to which Plaintiff has been subjected and the harm caused by that treatment is on going.

## AS AND FOR A FIRST COUNT
## TITLE VII, CIVIL RIGHTS ACT of 1964, 42 U.S.C. § 2000e

113. Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 112 inclusive of this Complaint, with the same force and effect as though fully set forth herein.

114. Defendant COUNTY, through their agents and employees, discriminated against the Plaintiff in his employment based on Plaintiff's race, color, national origin and retaliated against him for opposing discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended.

115. Plaintiff is and continues to be qualified for each and every position he as sought to be promoted into. He as been the victim of discrimination based on his race, color and ethnicity in no less than seven (7) different promotional positions or transfers positions for which he was qualified.

116. Plaintiff sought to be promoted into assignments and units, however he was denied those positions and Caucasian persons with lesser qualifications were afforded those slots. Those position and person to whom they were provided, include but are not limited to:

| NAME | POSITION |
| --- | --- |
| Ron Leli | Homicide Division |
| Sean Hanley | Narcotics Division |
| Greg Schlere | Narcotics Division |
| Joseph Isnardi | Homicide Division |
| Salvatore Gigante | District Attorney Section |

117.    The act of repeatedly promoting others including Officers Gigante, Handley, Leli, Isnardi, and Schlere to Detective Sergeant in Specialized Units is humiliating and embarrassing when the entire Police Department is aware that Mr. Serrata is the better performing officer and has not been selected for Promotion because he is Latino and not Caucasian.

118.    Plaintiff has been subjected to differential treatment based on his race, color and ethnicity and has been the victim of retaliation for his opposition to discrimination and wrongful treatment of himself and other persons of color, including but not limited to Latino persons.

119.    As a direct result of said acts, Plaintiff has suffered and continues to suffer loss of income. Plaintiff suffered loss of other employment benefits and continues to suffer distress, humiliation, embarrassment as a result of the differential and discriminatory treatment and hostile work environment.

120.    As a direct result of aforementioned acts, Plaintiff has been deprived of his rights, deprived of his freedoms, physically and mentally harmed. Plaintiff has been forced to seek redress in the courts rather than capitulating to the previously mentioned abuse, ridicule, and discrimination.

121.    Plaintiff has been subjected to humiliation, ignominy, loss of title/status, untimely removal from his position, and removal from his assignment. As a result, Plaintiff has experienced a diminution in his quality of life.

122.    Plaintiff was refused status, transfer, benefits, resources and trust awarded to other employees who were similarly situated, excepting the fact that they are not Black, Brown or Latino. Were Plaintiff a white person, rather than a Latino man, he would not have been subjected to the adverse employment actions, denial of promotions, denials of transfer, subjected to low paying work assignments, falsely advised that he had no basis to complain, and retaliated against and subjected

to the intense abuse and humiliation that continues.

123. Plaintiff has incurred incidental fees/damages, loss of pay, loss of benefits, and other damages/ injuries due to COUNTY's unlawful discrimination.

124. Further, once Plaintiff protested such unequal and unlawful treatment, Defendants SCPD and COUNTY through their agents, employees and servants, retaliated against him by creating and continuing his harmful placement, denying him advancement and promoting less qualified Caucasian persons over him and, subjecting Plaintiff to more and greater financial and emotional harm.

125. As a direct result of said acts, Plaintiff has suffered, and continues to suffer, loss of income, loss of wages, loss of benefits, loss of retirement benefits, loss of longevity, loss of status, loss of opportunities, distress, humiliation, embarrassment, emotional trauma, and damage to his reputation as alleged in the preceding paragraphs of the within Complaint.

126. That by reason of the foregoing, Plaintiff Serrata is now suffering and will continue to suffer irreparable injury and monetary damages has been subjected to economic losses and emotional injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been damaged in excess of five million ($5,000,000.00) dollars, as well as costs and attorney's fees.

## AS AND FOR THE SECOND COUNT
### 42 U.S.C. § 2000(d) (Title VI)

127. Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 126 inclusive of this Complaint, with the same force and effect as though herein fully set forth herein.

128. Defendant COUNTY through its agents and employees, discriminated against Plaintiff based on race, color and ethnicity while receiving federal assistance which violates Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000(d) et seq.

129. Defendant COUNTY, through their agents and employees, discriminated against the Plaintiff in his employment based on Plaintiff's race, color, ethnicity and retaliated against him for opposing discrimination. In violation of his rights, Plaintiff was excluded from nondiscriminatory employment in COUNTY. Plaintiff was denied obtaining and holding different positions in his employment and receiving the additional pay, options, opportunities and benefits he would have earned during his employment in those positions , and was personally discriminated against and retaliated against by Defendant COUNTY through their agents and employees based on his race and color.

130. The Defendant COUNTY and its members created a hostile work environment against Plaintiff through intentional acts of discrimination and retaliation. The hostile work environment caused Plaintiff to suffer abuse, harassment, embarrassment, and suffering based on his race, color and ethnicity. Other white employees were not subject to the hostile work environment to which the Plaintiff was subjected, instead they were provided promotions and transfers which allowed them to advance themselves and their careers.

131. As a direct result of said Defendants' acts, Plaintiff has suffered and continues to suffer loss of status, opportunities, diminished employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer distress, humiliation, embarrassment, great financial expense and damage to his reputation. As a result of Defendants' acts, Plaintiff suffered, and is entitled to damages sustained to date and continuing in excess of five million

($5,000,000) dollars as well as costs and attorney's fees.

## AS AND FOR THE THIRD COUNT
## 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT EQUAL PROTECTION DISCRIMINATION BASED ON RACE, COLOR AND ETHNICITY, FAILURE TO INTERVENE AND RETALIATION

132.    The Plaintiff repeats, reiterates, and re-alleges each allegation contained in paragraphs 1 through 131 of this Complaint with the same force and effect as though fully set forth herein.

133.    Defendants GIGANTE, HART, CROWLEY, and JOHN DOES 1-10, discriminated against the Plaintiff in his employment based on Plaintiff's race, color and ethnicity, in violation of the Fourteenth Amendment to the United States Constitution.

134.    The Defendants GIGANTE, HART, CROWLEY, and JOHN DOES 1-10 collectively and each one of them individually have engaged in actions and abuses which violate and deny Plaintiff his rights as provided under the Fourteenth Amendment of the United Stated Constitution violating his Fourteenth Amendment right of equal protection and due process in discriminating against Plaintiff because of and account of his race, color and ethnicity.

135.    Defendants' infringement upon and violation of Plaintiff's rights protected under the Fourteenth Amendment of the United States Constitution was and is intended to place a chilling effect upon the exercise of such rights by Plaintiff and other persons as is their right as provided by the U.S. Constitution to exercise such rights.

136.    The Defendants GIGANTE, HART, CROWLEY, SCPD  and JOHN DOES 1-10 made decisions to discriminate against, and violate the rights of Plaintiff individually and in collusion with each other.

137.    Defendants GIGANTE, HART, CROWLEY, and JOHN DOES 1-10 , as state actors, acting under color of law, proximately caused the deprivation of Plaintiff's federally protected rights, secured by the Fourteenth Amendment, as well as federal legislation, such as Title VII and §1981.

138.    Specifically, GIGANTE, HART, CROWLEY, and JOHN DOES 1-10 all authorized this action and took no action to prevent it and deprived Plaintiff Serrata of the equal protection of the law, refused to transfer him and provide protections against harm, denied him promotions and titles his being Latino,  denied transfer to Plaintiff knowing that doing so was causing him irreparable harm, and commenced to engage in acts of retaliation against Plaintiff in violation of the Fourteenth Amendment, §1981, Title VI and Title VII.

139.    Plaintiff was also denied reassignment without due process because of his race, color and ethnicity, in violation of the Fourteenth Amendment.

140.    Knowing that they were engaging in wrongful discrimination and retaliation against Plaintiff, GIGANTE, HART, CROWLEY, and JOHN DOES 1-10 each agreed to continue the abusive and wrongful treatment against him and each failed to prevent those wrongful actions and failed to intervene to stop them from happening or to stop them from continuing.

141.    As a direct result of said acts, Plaintiff has suffered, and continues to suffer, loss of income, loss of wages, loss of benefits, loss of retirement benefits, loss of status, loss of opportunities, loss of title, distress, humiliation, embarrassment, psychological trauma, and damage to his reputation as alleged in the preceding paragraphs of the within Complaint.

142.    That by reason of the foregoing, Plaintiff Serrata has been subjected to economic losses and psychic injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been damaged

in excess five million ($5,000,000.00) dollars, as well as punitive damages, costs and attorney's fees.

## AS AND FOR THE FOURTH COUNT
## 42 U.S.C. § 1983 – MUNICIPAL VIOLATIONS

143.     The Plaintiff repeats, reiterates, and re-alleges each allegation contained in paragraphs 1 through 142 of this Complaint with the same force and effect as though fully set forth herein.

144.     According to an email dated May 9, 2019 from Carolyn Weiss, Senior Trial Attorney, Employment Litigation Section Civil Rights Division, the United States Justice Department "conducts monitoring of the Suffolk County Police Department ("SCPD") pursuant to a consent decree that was entered in *U.S. v. Suffolk County* E.D.N.Y. 83-C-2737). That consent decree is grounded in Title VII of the Civil Rights Act of 1964, as amended. Specifically, the consent decree, which is a publicly filed document, covers disparate treatment and disparate impact discrimination against African Americans, Hispanics and women in all SCPD employment practices. Given the scope of the consent decree, [the Justice Department] reviews the SCPD's employment practices through the lens of equal employment opportunity based on race, ethnicity and gender."

145.     That Consent Decree was approved and entered by the Court on September 12, 1986. In the Consent Decree, while the County expressly denies that it had discriminated against women, Blacks or Hispanics, it acknowledges that certain of its selection criteria and personnel practices and the substantial under representation of women, Backs and Hispanics in the SCPD could support an inference that discrimination had occurred. This covered hiring and promotions.

146.     The Consent Decree expressly prohibits the County (including SCPD) from engaging in any further discrimination (Decree, ¶ 2), requires monitoring by the United States of the County's compliance with the Decree (Decree, ¶¶ 32-35), and provides that the Court retain jurisdiction of the

United States' action against the County for the purpose of implementing the relief provided in the Decree, as well as "to effectuate Suffolk County's full and complete compliance with Title VII." (Decree, ¶ 37)

147. In addition, Suffolk County and the SCPD has been and continues to be the subject of a Federal Consent Decree which was entered into in the form of an Agreement on or about January of 2014. The focus of this Agreement was on serious shortcomings identified and confirmed within the Suffolk County Police Department in its dealings, interactions and contacts with members of the Hispanic/Latino communities of Suffolk County.

148. Part of that Agreement was focused on ensuring that "SCPD will maintain implementation of a comprehensive policy prohibiting discrimination, including the denial of services, on the basis of race, color, ethnicity, national origin, religion, or sexual orientation in the SCPD police practices."

149. Further, that Agreement between Suffolk County and the United States Justice Department required that the "SCPD will maintain and implement a policy that promotes bias-free policing and equal protection in its hiring, promotion, and performance assessments processes. Officers who have a history of engaging in biased policing practices will not be entitled to promotional opportunities, except as required by collective bargaining laws and Civil Service Law, rules and regulations."

150. Defendants COUNTY and DEPARTMENT, acting under color of law, and through their employees, servants, agents and designees, have engaged in a policy, custom, and/or condoned a longstanding practice, which has deprived Plaintiff and other female employees of rights, privileges and immunities secured by the Fourteenth Amendment, Title VI, Title VII, and the 42 U.S.C. §1981.

These actions were, and continue to be, condoned by COUNTY policy makers, including but not limited to, Defendant COUNTY, Defendant DEPARTMENT, and GIGANTE, CROWLEY and JOHN DOES 1-10.

151.    Defendants, intentionally and knowingly, as an act of discrimination based on race, color and ethnicity has engaged in a practice and pattern in failing to treat Latino officers and detectives fairly and in a non-discriminatory way with regard to hiring, promotions and transfers, such as the Plaintiff, within the DEPARTMENT because of their race, color and ethnicity . Defendants also engaged in a pattern and practice of retaliating against officers who oppose discriminatory, abusive, violative treatment, especially Black and Brown officers like Plaintiff for his protestations to race, color and ethnicity based discrimination.

152.    Defendants COUNTY and DEPARTMENT were further aware of the systematic practice of unlawful race, color and ethnicity based discrimination within the DEPARTMENT, yet failed to address, remedy, or change said systematic practices, which work to the detriment of Plaintiff Serrata and other persons situated similarly.

153.    Defendants, intentionally and knowingly materially altered the terms and conditions of Plaintiff's employment in retaliation for protesting discriminatory practices within the DEPARTMENT. Defendants COUNTY and DEPARTMENT were further aware of the systematic practices of unlawful race, color and ethnicity discrimination within the DEPARTMENT, yet failed to address, remedy, or change said discriminatory practices.

154.    Defendants COUNTY and DEPARTMENT failed to adequately train or supervise their upper-level supervisors; specifically, Defendants COUNTY and DEPARTMENT failed to adequately train supervisors on discrimination laws, and failed to exercise adequate supervision over

supervisors in order to ensure that discrimination laws were respected.

155.    COUNTY and DEPARTMENT have engaged and continue to engage in hiring practices, promotion practices and providing of job opportunities which discriminate against Black and Brown persons.  In the hiring process, which then leads to promotions in the past five years, 1,419 Black applicants for the SCPD produced only 16 Black officers in the four years after a 2015 test.  The number Latino officers hired continues to be inconsistent.

156.    These discriminatory acts committed by Defendants COUNTY and DEPARTMENT, and by INDIVIDUAL DEFENDANTS, who were responsible for policy decisions and the enforcement thereof, Plaintiff suffered, and continues to suffer, diminished employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer distress, humiliation, and embarrassment.

157.    Defendants' acts of ongoing race, color and ethnicity based discrimination were intended to subjugate Plaintiff Serrata.  By so acting, Defendants have willfully violated the constitutional rights guaranteed to Plaintiff Serrata and similarly situated persons by the Fourteenth Amendment.

158.    As a direct result of said acts, Plaintiff has suffered, and continues to suffer, loss of income, loss of wages, loss of benefits, loss of retirement benefits, loss of status, loss of opportunities, loss of title, distress, humiliation, embarrassment, psychological trauma, and damage to his reputation as alleged in the preceding paragraphs of the within Complaint.

159.    That by reason of the foregoing, Plaintiff Serrata has been subjected to economic losses and psychological injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been

damaged in excess of five million ($5,000,000.00) dollars, as well as punitive damages, costs and attorney's fees.

## AS AND FOR THE FIFTH COUNT
### 42 U.S.C. § 1981

160.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 159 inclusive of this Complaint, with the same force and effect as though herein fully set forth.

161.    The above discriminatory pattern and practice based on race and color by Defendant COUNTY through their agents and employees violates 42 U.S.C. §1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No, 102-406).

162.    As a direct and proximate result of said acts by GIGANTE, HART, CROWLEY, SCPD, COUNTY and JOHN DOES 1-10, Plaintiff has suffered loss of employment and continues to suffer loss of income, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to his reputation.

163.    Because of Plaintiff's color, race and ethnicity he has been subjected to different, disparate, and abusive mistreatment as detailed above and has been treated differently than white individuals.

164.    As a direct result of said acts, Plaintiff has suffered, and continues to suffer, loss of income, loss of wages, loss of benefits, loss of retirement benefits, loss of status, loss of opportunities, loss of title, distress, humiliation, embarrassment, psychological trauma, and damage to his reputation as alleged in the preceding paragraphs of the within *Amended Complaint.*

165.    That by reason of the foregoing, Plaintiff Serrata has been subjected to economic losses and psychological injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been

damaged in excess of five million ($5,000,000.00) dollars, as well as punitive damages, costs and attorney's fees.

### AS AND FOR A SIXTH COUNT CAUSE OF ACTION
### PLAINTIFF IS A WHISTLE BLOWER UNDER THE FEDERAL FALSE CLAIMS ACT
### AND CIVIL SERVICE LAW §75-b

166.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 165 inclusive of this Complaint, with the same force and effect as though herein fully set forth.

167.    Plaintiff, as a Suffolk County Police Officer and public employee, is protected from retaliation as a Whistleblower by Civil Service Law §75-b and under Section 3730(h) of the False Claims Act.

168.    On June 12, 2019, Plaintiff was asked, and consented, to provide testimony at the Government Operations, Personnel, Housing & Information Technology Committee of the Suffolk County Legislature (hereinafter "Suffolk County Legislature") while employed by COUNTY and SCPD regarding discriminatory employment practices of Suffolk County and SCPD. His agreement to come forward was his good faith reasonable belief that the Defendants were committing fraud, abusing and manipulating the hiring promotion process in violation of law, rule, regulations and agreement with the Federal Justice Department.

169.    Plaintiff's appearing as part of a special investigation done by Joel Weiss, Esq. was outside the chain of command and did not result in Plaintiff reporting to or disclosing information to members of the SCPD, but members of a completely different branch of the Suffolk County government.

170.     The disclosure of the information relating to the abuses and problems of the hiring and promotional process to the Special Counsel and the testimony provided to the Suffolk County Legislature disclosed violations of Federal Consent Decrees, laws, rules, and regulations, both State and Federal. Plaintiff was engaged in activity that could reasonably lead to the filing of a False Claims Act claim (his investigation and testimony into "improper" hiring and promotion of S. Gigante), that GIGANTE, HART and CROWLEY knew about this activity, and thereafter Plaintiff faced retaliation, the refusal to transfer him and promote Plaintiff to positions for which he was clearly qualified and did so by providing the positions to less qualified White persons as a result.

171.     Additionally, Plaintiff, at great risk to himself engaged in exposing and hopefully deterring the abuse of the hiring and promotion process and the violating of the Consent Decrees and laws governing non-discrimination which had been mandated by the United States Justice Department and it was Plaintiff's purpose to expose and deter such future abuses through his investigation, inquiries, complaints, and his testimony which addressed gross mismanagement of the hiring, promotion, interview and selection processes.

172.     Further, the testimony about his treatment and the selection process which allowed the rules and laws to be violated demonstrated an abuse of authority, power and office within the SCPD. Plaintiff's testimony also uncovered activity and abuses that were a substantial and specific danger to public health and/or safety,

173.     Plaintiff's testimony before the Suffolk County Legislature as to the improper and discriminatory employment practices of COUNTY and SCPD was based on his personal experience, personal knowledge, and his reasonable belief that the promotion of an unqualified, Caucasian relative of the Chief of Police, rather than the more qualified Plaintiff and other police officers of

color, was unjust, a violation of law, a violation of the rules and regulations of the County, a violation of prior consent decrees under which the County was operating, and addressed discriminatory, and gross mismanagement of the COUNTY and SCPD, which also included a decrease in the safety to the public and overall effectiveness of the SCPD.

174.    Civil Service Law §75-b states in pertinent part:

> 2. (a) A public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses to a governmental body information: (I) regarding a violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety; or (ii) which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action. "Improper governmental action" shall mean any action by a public employer or employee, or an agent of such employer or employee, which is undertaken in the performance of such agent's official duties, whether or not such action is within the scope of his employment, and which is in violation of any federal, state or local law, rule or regulation.

175.    Plaintiff's whistleblower testimony before the Suffolk County Legislature was not made through the normal channels of SCPD, was not made to the wrongdoers which he exposed and was not made as part of his normal duties. In fact, disclosures Plaintiff made were about his application for his own promotion and advancement and about his mistreatment in the process by Defendants and was made outside of normal channels. Further, his appearing and testifying before the Suffolk County Legislature was not part of his function as a Detective Sergeant and was outside of his normal duties. Therefore his disclosures of wrongdoing are clearly protected and Defendants are prohibited from taking the adverse personnel actions which they have taken in response.

176.    Defendants GIGANTE, HART, CROWLEY, SUFFOLK and SCPD were aware that Plaintiff provided his testimony before the Suffolk County Legislature.

177.    31 U.S.C.A. § 3730(h) provides relief from retaliatory actions and reads:

-Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

178.    Mr. Serrata has suffered and continues to suffer the retaliation from Defendants for his disclosure to the Suffolk County Legislature of Defendants discriminatory employment practices which include and are not limited to, constructive demotion, failure to promote, deprivation of overtime, failure to abide by Governor Cuomo's COVID-19 protocols, attempts to devalue Mr. Serrata's decision making and supervisory skills, and failure to cover medical expenses after a work related injury.

179.    Following his June 2019 testimony, Mr. Serrata applied for three (3) transfers in rapid succession, March 2nd, 16th and 23rd of 2020 for Detective Sergeant Homicide, Detective Sergeant Narcotics, and Detective Sergeant Homicide, respectively.  These transfers, while still maintaining the rank of Detective Sergeant, were effectively promotions in many other senses of the word promotion.  There was an increase in compensation, opportunities for greater overtime, higher prestige, greater opportunity to benefit the public, and were all part of a Special Command to which Mr. Serrata has not been allowed entry.

180. In each instance a less qualified Caucasian individual was selected for the position. In each instance Defendant GIGANTE reviewed and signed Mr. Serrata's application with the full knowledge that Mr. Serrata testified to the discriminatory employment practices of which GIGANTE was part. In each instance, all Defendants were aware that Mr. Serrata testified before the Suffolk County Legislature. In each instance Mr. Serrata continued to face the same abuse which not only was a discriminatory employment practice, but a pure act of retaliation.

181. In at least one instance, Defendant CROWLEY in response to Mr. Serrata's transfer application request to Detective Sergeant in Narcotics wrote to Chief of Detectives, Defendant GIGANTE. In that correspondence, CROWLEY falsely stated that Mr. Serrata had no direct experience in narcotics investigations. Both CROWLEY and GIGANTE, along with all Defendants either are, or should be, aware of Mr. Serrata's twenty-one year work history with COUNTY and SCPD and the substantial amount of work Mr. Serrata has done in narcotics.

182. When Mr. Serrata formally objected to this mischaracterization in writing, CROWLEY refused to acknowledge the validity of Mr. Serrata's work and instead attempted to minimize Mr. Serrata's work by calling it narcotics related and ultimately claiming his (Crowley's) statement of no direct experience was relevant and accurate. CROWLEY added that he recognizes Mr. Serrata's "varied police experience", and reluctantly says Mr. Serrata is worth consideration. However, the damage is done as it will now be falsely asserted that Mr. Serrata has no experience in narcotics, thus reinforcing the structure to continue keeping Mr. Serrata from the more lucrative positions his White counterparts are given.

183.     Defendant CROWLEY has continued to require additional and more documentation in order for Plaintiff to seek and obtain payment for his overtime hours worked.  This treatment is unique to Plaintiff and is not required of other White Detectives.  This treatment is condoned and accepted by GIGANTE, HART, SCPD and the COUNTY, all of whom authorized these actions and took no action to prevent them.

184.     CROWLEY has purposefully withheld approval and the granting of authority for Plaintiff to be paid his overtime pay despite his paperwork, which is in excess of what others are required to file, being provided and filed in a timely and prompt fashion.

185.     Defendant CROWLEY, in taking these actions, intentionally sought to and is seeking to impact Plaintiffs's financial well being and further harm plaintiff knowing that he has complained and raised issues about mistreatment, discrimination and retaliation.  This withholding of Plaintiff's overtime pay is not consistent of how White Detectives and Officers have been treated.

186.     Furthermore, when Mr. Serrata calls in to CROWLEY to report overtime assignments, as per procedure, instead of merely documenting and approving the call, CROWLEY often falsely lists the call as a call for supervision.  This overdocumentation and paper trail not only prevents Mr. Serrata from receiving his earned overtime pay, but diminishes Mr. Serrata as a person. CROWLEY is creating a false narrative that Mr. Serrata is seeking supervisory assistance in matters in which he is not.  This type of reporting weakens the stature of Mr. Serrata as he continues to seek advancement in SCPD.  This false reporting also brings into question Mr. Serrata's honesty as Mr. Serrata is claiming overtime, not unlike other persons, while his direct supervisor is claiming the call was for supervisory assistance.

187.    Upon information and belief, this treatment by CROWLEY is and was known by GIGANTE, HART, SCPD and the COUNTY who all authorized these actions and took no action to prevent them.

188.    On April 26, 2021, Detective Sergeant Serrata was scheduled to work his normal 9:00 A.M. to 5:00 P.M. shift, when he received a work related phone call at 4:15 A.M. from Sergeant Bender. The call advised Mr. Serrata of a Grand Larceny where evidence was recovered at three separate locations. Mr. Serrata issued orders to maintain the scene as per protocol, instructed Detectives Turansky and Maynes to respond and headed to the scene himself. Mr. Serrata was then working in his capacity as a SCPD Detective Sergeant.

189.    En route to the scene while stopped at a light, Mr. Serrata was rear ended causing him to sustain injuries to his head, neck and back. He was transported to Stony Brook Hospital where he was treated for his injuries and later released.

190.    Thereafter on May 17, 2021, Defendants, in their continued retaliation against Mr. Serrata, declared that the accident involving Mr. Serrata on his way to a crime scene after receiving a call and issuing orders was not work related, and closed his workers compensation case thereby causing Mr. Serrata to incur medical bills for performing his job function.

191.    Upon information and belief, this treatment by Defendants is and was known by GIGANTE, HART, SCPD, the COUNTY and JOHN DOES 1 - 10 who all authorized these actions and took no action to prevent them.

192.    As a direct result of said acts, Plaintiff has suffered, and continues to suffer, loss of income, loss of wages, loss of benefits, loss of retirement benefits, loss of longevity, loss of status, loss of opportunities, distress, humiliation, embarrassment, emotional trauma, and damage to his

reputation as alleged in the preceding paragraphs of the within Complaint.

193.    That by reason of the foregoing, Plaintiff Serrata is now suffering and will continue to suffer irreparable injury and monetary damages has been subjected to economic losses and emotional injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been damaged in excess of five million ($5,000,000.00) dollars, as well as costs and attorney's fees.

## AS AND FOR THE SEVENTH COUNT
### NYS HUMAN RIGHTS LAW, EXECUTIVE LAW ART. 15 §§ 296 and 290 FOR DISCRIMINATION AND RETALIATION AGAINST COUNTY, SCPD, GIGANTE, HART, CROWLEY and JOHN DOES 1-10

194.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 193 inclusive of this Complaint, with the same force and effect as though herein fully set forth.

195.    As a direct and proximate result of said acts by GIGANTE, HART, CROWLEY, SCPD, COUNTY and JOHN DOES 1-10, Plaintiff has suffered loss of employment and continues to suffer loss of income, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to his reputation.

196.    Plaintiff is and continues to be qualified for each and every position he as sought to be promoted into. He as been the victim of discrimination based on his race, color and ethnicity and retaliation in no less than five (5) different promotional positions or transfers for which he was qualified.

197.    Plaintiff sought to be promoted into assignments and units, however he was denied those positions and Caucasian persons with lesser qualifications were afforded those slots. Those position and person to whom they were provided, include but are

not limited to:

| NAME | POSITION |
|------|----------|
| - Ron Leli | Homicide Division |
| - Sean Hanley | Narcotics Division |
| - Greg Schlere | Narcotics Division |
| - Joseph Isnardi | Homicide Division |
| - Salvatore Gigante | District Attorney Section |

198.    The act of repeatedly bypassing Mr. Serrata, through the promotions of others, including Officers Gigante, Handley, Leli, Isnardi, and Schlere to Detective Sergeants in Specialized Units is humiliating and embarrassing when the entire Police Department is aware that Mr. Serrata is the better performing officer and has not been selected for Promotion because he is Latino and not Caucasian.

199.    Plaintiff has been subjected to differential treatment based on his race, color and ethnicity and has been the victim of retaliation for his opposition to discrimination and wrongful treatment of himself and other persons of color, including but not limited to Latino persons.

200.    As a direct result of said acts, Plaintiff has suffered and continues to suffer loss of income.    Plaintiff suffered loss of other employment benefits and continues to suffer distress, humiliation, embarrassment as a result of the differential and discriminatory treatment and hostile work environment.

201.    As a direct result of aforementioned acts, Plaintiff has been deprived of his rights, deprived of his freedoms, physically and mentally harmed.   Plaintiff has been forced to seek redress in the courts rather than capitulating to the previously mentioned abuse, ridicule, and discrimination.

202. Plaintiff has been subjected to humiliation, ignominy, loss of title/status, untimely removal from his position, and removal from his assignment. As a result, Plaintiff has experienced a diminution in his quality of life.

203. Plaintiff was refused status, transfer, benefits, resources and trust awarded to other employees who were similarly situated, excepting the fact that they are not Black, Brown or Latino. Were Plaintiff a white person, rather than a Brown Latino man, he would not have been subjected to the adverse employment actions, denial of promotions, denials of transfer, subjected to low paying work assignments, falsely advised that he had no basis to complain, and retaliated against and subjected to the intense abuse and humiliation that continues.

204. Plaintiff has incurred incidental fees/damages, loss of pay, loss of benefits, and other damages/ injuries due to GIGANTE, HART, CROWLEY, SCPD, COUNTY and JOHN DOES 1-10's unlawful discrimination.

205. Further, once Plaintiff protested such unequal and unlawful treatment, Defendants GIGANTE, HART, CROWLEY, SCPD, COUNTY and JOHN DOES 1-10 through their agents, employees and servants, retaliated against him by creating and continuing his harmful placement, denying him advancement and promoting less qualified Caucasian persons over him and, subjecting Plaintiff to more and greater financial and emotional harm.

206. As a direct result of said acts, Plaintiff has suffered, and continues to suffer, loss of income, loss of wages, loss of benefits, loss of retirement benefits, loss of longevity, loss of status, loss of opportunities, distress, humiliation, embarrassment, emotional trauma, and damage to his reputation as alleged in the preceding paragraphs of the within Complaint.

207. That by reason of the foregoing, Plaintiff Serrata is now suffering and will continue to suffer irreparable injury and monetary damages has been subjected to economic losses and emotional injury, distress, pain, suffering, loss of self-esteem, self-doubt, disgrace, public humiliation, embarrassment, inconvenience, anxiety and frustration, and, thus, has been damaged in excess of five million ($5,000,000.00) dollars, as well as punitive damages, costs and attorney's fees.

## PRAYER FOR RELIEF

Wherefore, based on the foregoing, Plaintiff requests judgment as follows:

a.   First Cause of Action: in excess of five million ($5,000,000.00) dollars as well as other damages, costs and attorney's fees.

b.   Second Cause of Action: in excess of five million ($5,000,000.00) dollars as well as other damages, costs and attorney's fees.

c.   Third Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

d.   Fourth Cause of Action: in excess of five million ($5,000,000.00) dollars as well as other damages, costs and attorney's fees.

e.   Fifth Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

f.   Sixth Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

g.   Seventh Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

h.   Attorney's fees and costs, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k) and other fee and costs statutes;

i.   A declaratory judgment stating that Defendants wilfully violated Plaintiff's rights secured by federal and state laws as alleged herein;

j.     Injunctive relief: an injunction requiring Defendants to correct all present and past violations of federal and state law as alleged herein; to enjoin the Defendants from continuing to act in violation of federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws; and

k.     An Order granting such other legal and equitable relief as the court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated: Hempstead, New York
        June 29, 2021

LAW OFFICES OF
FREDERICK K. BREWINGTON

By: _____
        FREDERICK K. BREWINGTON
        *Attorneys for Plaintiff*
        556 Peninsula Boulevard
        Hempstead, New York  11550
        (516) 489-6959